# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        **Plaintiff,**

v.                                         **Case No. 07-CR-131**

**DELMAR LEE**
        **Defendant.**

## SENTENCING MEMORANDUM

Defendant Delmar Lee pleaded guilty to possessing a firearm as a felon, contrary to 18 U.S.C. § 922(g)(1), and I set the case for sentencing. In imposing sentence, I follow a two-step procedure: (1) calculate the advisory guideline range, resolving any disputes necessary to that determination, then (2) select a sentence that is sufficient but not greater than necessary given all of the factors set forth in 18 U.S.C. § 3553(a). See, e.g., United States v. Bush, 523 F.3d 727, 729 (7th Cir. 2008); United States v. Holt, 486 F.3d 997, 1004 (7th Cir. 2007).

### I. GUIDELINE DETERMINATION

The pre-sentence report ("PSR") recommended a base offense level of 24 under U.S.S.G. § 2K2.1(a)(2) because defendant had two prior felony convictions for "crimes of violence." Defendant objected, arguing that one of the two predicate offenses – a conviction for "fleeing" under Wis. Stat. § 346.04(3) – did not qualify as a crime of violence. Guideline 2K2.1(a) borrows the definition of the term "crime of violence" from the career offender guideline, see U.S.S.G. § 2K2.1 cmt. n.1, which states:

> The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that--

> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a). Defendant relied on the recent decision in Begay v. United States, 128 S. Ct. 1581 (2008), which held that drunk driving is not a "violent felony" under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). I could not conclude that Begay controlled in this case.

First, the Seventh Circuit has held, albeit in pre-Begay cases, that fleeing under Wisconsin law is a crime of violence under § 4B1.2. See United States v. Rosas, 410 F.3d 332, 336-37 (7th Cir. 2005); see also United States v. Howze, 343 F.3d 919, 921 (7th Cir. 2003) (holding that fleeing is a crime of violence under the ACCA). It may be that Begay will change the way the Seventh Circuit analyzes crimes of violence, under both the ACCA and the career offender guideline, but I could not preemptively overrule Rosas. Begay was not directly on point, and the Seventh Circuit has held that district judges must continue to follow circuit precedent, even if they believe it undermined by subsequent legal developments. See Donohoe v. Consolidated Operating & Production Corp., 30 F.3d 907, 910 (7th Cir. 1994).

Second, I noted that, under the Begay analysis, there are significant differences between drunk driving, which does not typically involve "purposeful, violent, and aggressive conduct," 128 S. Ct. at 1586, and fleeing, which certainly can. Further, under Wisconsin's fleeing statute, § 346.04(3), the defendant must act knowingly, i.e. intentionally. See State v. Sterzinger, 256 Wis. 2d 925, 931 (Ct. App. 2002) ("Because Wis. Stat. § 346.04(3) requires that a defendant knowingly flee in willful disregard of an officer's signal, the specter of

2

imprisoning someone who was unaware that he or she engaged in unlawful conduct is simply not present."). Fleeing is not a strict liability offense, as is drunk driving. See Begay, 128 S. Ct. at 1586.

For these reasons, I overruled the guideline objection and adopted a base level of 24.[1] Subtracting 3 levels for acceptance of responsibility, U.S.S.G. § 3E1.1, and coupled with defendant's criminal history category of IV, I adopted an imprisonment range of 57-71 months under the sentencing guidelines. I turned then to imposition of sentence under 18 U.S.C. § 3553(a).

## II.  SENTENCE

**A.  Section 3553(a) Factors**

Section 3553(a) directs the court to consider:

(1)   the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)   the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)   the kinds of sentences available;

(4)   the advisory guideline range;

(5)   any pertinent policy statements issued by the Sentencing Commission;

---

[1] I did, however, take a broader look at this issue under § 3553(a).

3

(6) the need to avoid unwarranted sentence disparities; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The statute requires the court, after considering these factors, to impose a sentence that is sufficient but not greater than necessary to satisfy the purposes of sentencing set forth in § 3553(a)(2). Although the guidelines serve as the starting point and initial benchmark in making this determination, Gall v. United States, 128 S. Ct. 586, 596 (2007), the district court may not presume that the guideline sentence is the correct one, Rita v. United States, 127 S. Ct. 2456, 2465 (2007), or place any "thumb on the scale favoring a guideline sentence." United States v. Sachsenmaier, 491 F.3d 680, 685 (7th Cir. 2007). Rather, the court must make an independent determination of what sentence is sufficient but not greater than necessary, taking into account the advisory guideline range, the relevant § 3553(a) factors, and any non-frivolous arguments presented by the parties in support of a particular sentence. United States v. Wilms, 495 F.3d 277, 282 (6th Cir. 2007).

**B. Analysis**

    **1. Nature of Offense**

On December 23, 2006, City of Milwaukee police officers received information from an informant that a man in a silver PT cruiser had a gun. Officers located the car and tried to pull it over, but the driver fled. The officers saw the driver lean towards the passenger side and throw what appeared to be a gun out the window; they stopped and recovered a loaded 9 mm pistol, during which time they lost sight of the car. They later located the cruiser, but only a female passenger remained inside. The female identified the driver as her boyfriend,

4

defendant Lee. A few months later officers learned that defendant was at an address in West Allis, where they found him hiding beneath a cardboard box in the attic and arrested him.

### 2. Character and Background of Defendant

Defendant was twenty-seven years old and had a fairly serious record, which included juvenile adjudications for cocaine possession and disorderly conduct, and adult convictions for fleeing, false imprisonment and battery twice. The second battery case involved him slapping and pushing a woman to the ground while she held a baby. He performed poorly on supervision in the community and incurred numerous conduct reports while in state prison on the false imprisonment and fleeing cases.

Defendant's brushes with the law followed a rough childhood, which the PSR described in detail. Defendant's father was abusive and spent time in prison, and defendant's mother was murdered in his presence when he was just five years old. An uncle he looked up to was also murdered. I did not doubt that defendant carried issues related to this brutality, which he had not fully addressed. Defendant had a five year old child of his own and owed over $8000 in back child support, but he did appear to be involved in the child's life. He admitted some past use of alcohol and marijuana, but he did not appear to currently have a serious substance problem; all of his tests on pre-trial release were negative. Defendant dropped out of school and had not obtained his GED. Perhaps as a result of his insufficient educational development, he compiled a limited employment record, and I found that he would benefit from further educational and vocational training. He admitted past gang association but denied any current affiliation.

5

### 3. Guidelines and Purposes of Sentencing

The guidelines recommended 57-71 months, but defendant presented several arguments for a lesser sentence under § 3553(a). He first argued that the offense conduct was not aggravated, but I disagreed: defendant fled from officers and threw a loaded handgun out of a moving car, which presented a danger to those in the vicinity. I found this conduct all the more disturbing given his past record of fleeing and throwing drugs from a car. Defendant also noted the absence of certain aggravating factors: the gun was not stolen or particularly dangerous, and there was no evidence that he sought to harm others with it. However, if such factors had been present, his guideline range would likely have been higher, with possible enhancements under U.S.S.G. §§ 2K2.1(b)(4) or (6). I did not really see the absence of such aggravating factors as mitigating the offense.

Second, defendant noted his bad childhood and resulting anger issues. I did not doubt the veracity of his claims in this regard, but I did not really see them as calling for a lesser sentence. I agreed that defendant would benefit from treatment, and I recommended counseling in prison and included such as a condition of supervised release. However, until he received treatment and learned to control himself better, I had to be concerned about protecting the public.

Third, defendant noted the unusual circumstance of his being prosecuted as an adult for the Wisconsin fleeing offense, which he committed at age sixteen. He noted that unlike most other offenses, which require a specific waiver for a sixteen year old to be prosecuted as an adult, Wis. Stat. § 938.17(1) provides that a sixteen year old who commits a criminal traffic violation, such as fleeing, is always treated as an adult. Had the fleeing conviction resulted in a juvenile sentence, under § 4A1.2(d) it likely would have been too old to score criminal history

6

points or to enhance the offense level under § 2K2.1(a). I found that this argument deserved consideration. Absent the inclusion of this offense, defendant's final offense level would have been 17 and his criminal history category III, producing a range of 30-37 months. I refused to entirely discount the fleeing conviction and impose a sentence under this alternate range, as defendant requested, particularly given the fact that the present case also involved fleeing from police officers. However, I did take this overstatement and source of possible disparity into account. It seemed inappropriate to treat a criminal traffic matter committed prior to age eighteen (or seventeen under Wisconsin law, see Wis. Stat. § 938.02(1)) as categorically more severe than other, likely more serious crimes, as this particular state law required.

Relatedly, I also considered the rationale of Begay in evaluating whether defendant posed the degree of risk assumed by the guidelines in § 2K2.1(a)(2). As discussed above, the designation of defendant's fleeing conviction as a crime of violence had a substantial impact on the guideline range: absent that designation, defendant's offense level would have been 17, rather than 21, and his range 37-46 months, rather than 57-71.

The Begay decision has two components. First, in construing the ACCA's definition of the term "violent felony," see 18 U.S.C. § 924(e)(2)(B),[2] which is virtually identical to the definition of the term "crime of violence" in U.S.S.G. § 4B1.2(a)(2), the Court stated that the provision's listed examples – burglary, arson, extortion, or crimes involving the use of

---

[2] The ACCA provides that "the term 'violent felony' means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that--(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B).

7

explosives – illustrate the kinds of crimes that fall within the statute's scope. The Court found that the presence of these examples suggested that the statute covered only similar crimes, rather than every crime that presents a serious potential risk of physical injury to another. Based on this interpretation, the Court concluded that it would "read the examples as limiting the crimes that clause (ii) covers to crimes that are roughly similar, in kind as well as in degree of risk posed, to the examples themselves." Begay, 128 S. Ct. at 1585. Under this logic, a court could find that fleeing is unlike the listed examples in U.S.S.G. § 4B1.2(a) in kind and perhaps in degree. For one thing, it is not an offense committed or directed against a particular victim.

The second component of Begay, the specific holding, is that drunk driving differs from the listed examples in the ACCA in at least one pertinent, and important, respect. The listed crimes all typically involve purposeful, violent and aggressive conduct, conduct that makes it more likely that an offender, later possessing a gun, will use that gun deliberately to harm a victim. Crimes committed in such a purposeful, violent, and aggressive manner are potentially more dangerous when firearms are involved, the Court found. Drunk driving typically does not require purposeful, violent and aggressive conduct; rather, it is more like crimes that impose strict liability. Id. at 1586. The Court explained that in this respect – a prior crime's relevance to the possibility of future danger with a gun – crimes involving intentional or purposeful conduct are different than strict liability crimes. id. at 1587. As indicated earlier in resolving the issue under the guidelines, fleeing can involve highly aggressive conduct, and under Wisconsin law it must be intentionally committed. In this respect, then, Begay was not exactly on point.

However, given some of the differences between fleeing and the examples listed in § 4B1.2(a)(2), I found it appropriate to discount the guidelines' recommendation somewhat,

8

although not to the extent defendant requested. Defendant had a significant record of violence aside from the fleeing case, as alluded to above. Therefore, I found that he did pose some risk with a gun, which it is the purpose of these provisions to address. Ultimately, I had to decide what sentence was sufficient to protect the public and deter defendant from re-offending given that risk.

Under all of the circumstances, I found a sentence of 43 months sufficient but not greater than necessary. This sentence took into account the effect of the fleeing conviction on the guidelines' recommendation without entirely discounting that conviction. It was also towards the high end of the range had I concluded that this offense was not a crime of violence. I found this term sufficient to provide just punishment and to protect the public. Because it resulted in defendant actually serving more prison time than he previously had, it was also sufficient to deter him from re-offending. Finally, in imposing this below-guideline sentence I considered defendant's improved behavior in the past few years – his last conviction was from 2002 – and his allocution at sentencing, which displayed some maturity and insight.

I arrived at this conclusion by analyzing the § 3553(a) factors and noted that I would have imposed the same sentence regardless of my findings on the guidelines. Thus, even if the Seventh Circuit were to conclude in light of Begay that fleeing is not a crime of violence, I found that it would nevertheless be appropriate in this case to consider defendant's fleeing conviction (as well as all of his other convictions) under § 3553(a). Further, as indicated above, the sentence fell within the range if the fleeing conviction were not considered a crime of violence, and I would have imposed the same sentence, towards the high end of that alternate range, had that been the case.

## III.  CONCLUSION

Therefore, I committed defendant to the custody of the Bureau of Prisons for 43 months. I recommended that he participate in GED classes, anger management and vocational training, and be placed at an institution as close to his family in Milwaukee as possible.  Upon release, I ordered him to serve three years of supervised release.  I selected the maximum supervision term to ensure that he was monitored and received needed treatment.  As conditions, I required defendant to participate in a program of testing and residential or outpatient treatment for drug and alcohol abuse; avoid any gang association; obtain his General Equivalency Diploma or High School Equivalency Diploma; and participate in a mental health treatment program.  Other terms and conditions of the sentence appear in the judgment.

Dated at Milwaukee, Wisconsin, this 27th day of June, 2008.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge